## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL SHOATZ, a/k/a RUSSELL SHOATS  :  <br> : <br>  Plaintiff, : <br> : <br>  v.  : <br> : <br> JOHN E. WETZEL, in his official capacity as Secretary of the Pennsylvania Department of Corrections; LOUIS S. FOLINO, in his official capacity as Superintendent of the State Correctional Institution at Greene; and JOHN KERESTES, in his official capacity as Superintendent of the State Correctional Institution at Mahanoy.  : : : : : : : : : : : <br> Defendants. | Case No. <br><br> ELECTRONICALLY FILED <br><br> JURY TRIAL DEMANDED |

### COMPLAINT

Plaintiff Russell Shoatz, a/k/a Russell Shoats ("Shoatz"), by and through his undersigned counsel, files the following Complaint.

### Introduction

Russell Shoatz is a 69-year-old who has been locked in solitary confinement at various State Correctional Institutions for the past 21 consecutive years, and 28 of the past 30 years. Shoatz is a father, grandfather, great-grandfather, human rights advocate, and published author. For the last 23 years, Shoatz has had an impeccable disciplinary record, receiving only one misconduct for a rule violation when he covered a vent in his cell that was blowing cold air in an attempt to stay warm.

Sentenced to life in prison without the possibility of parole in 1972, Shoatz escaped from imprisonment in 1977 and in 1980. After he was recaptured, Shoatz was held in solitary confinement until being released to the general prison population at SCI Pittsburgh in 1982. Upon release to the general population, Shoatz committed himself to abiding by the rules and regulations of the prison. Toward this end he became involved with the Pennsylvania Association of Lifers (PAL), an officially-approved prison organization dedicated to advancing the interests of life-sentenced prisoners.

In late 1982, Shoatz was one of a group of prisoners serving life sentences at the SCI Pittsburgh who began discussing ways to change the PAL to better serve the needs of the membership. Shoatz wanted the PAL to work with their non-incarcerated family members and public supporters to lobby the state legislature to repeal life without parole sentences. The membership of the PAL expanded from approximately 12 people to more than 100. The night that the old leadership was impeached and Shoatz appointed interim President in spring 1983, he was placed in solitary confinement.  Pennsylvania prison officials have refused to release him from solitary confinement ever since.

For a 19-month period from November 1989 to June 1991, Shoatz was housed in the general prison population at the federal penitentiary in Leavenworth, Kansas.  During his time in general population, Shoatz was an exemplary prisoner and did not commit any prison rule infractions.  Despite this fact, following his transfer back to the state system, Shoatz was immediately placed back in solitary confinement where he remains to this day.

For the better part of 30 years, Shoatz has lived in virtual isolation confined to a 7 x 12 cell for 23-24 hours per day, 7 days a week.  The continuous prolonged exposure to the

brutal conditions of solitary confinement have caused Shoatz physical and mental harm and anguish, and imposed a significant hardship on him in relation to the ordinary incidents of prison life. Prison officials refuse to explain what Shoatz must do in order to be released into the general prison population, and continue to warehouse him in solitary confinement based on an irrational fear of and animosity toward his human rights activism and perceived dissident politics. For Shoatz, it seems that death is his only hope of being released from the torturous conditions of solitary confinement.

## Jurisdiction and Venue

1. This is an action for injunctive, declaratory and monetary relief for violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201.

3. This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because most of the events and omissions giving rise to the claims occurred, and most of the witnesses to these events and omissions reside, in the Western District of Pennsylvania.

## Parties

4. Plaintiff Russell Maroon Shoatz (Inmate No. AF-3855) is 69-year old adult individual who has been held in solitary confinement continuously for the past 21 years (since June 1991) at the State Correctional Institutions at Mahanoy ("SCI Mahanoy"), Greene ("SCI Greene") and Dallas ("SCI Dallas").

5. Defendant John E. Wetzel is the Secretary of the Pennsylvania Department of Corrections ("DOC"). Defendant Wetzel is responsible for the overall operation of the DOC. Defendant Wetzel is sued in his official capacity.

6. Defendant Louis S. Folino is the Superintendent at SCI Greene. Defendant Folino is responsible for the overall operation of SCI Greene. Defendant Folino is sued in his official capacity.

7. Defendant John Kerestes is the Superintendent at SCI Mahanoy. Defendant Kerestes is responsible for the overall operation of SCI Mahanoy. Defendant Kerestes is sued in his official capacity.

## Factual Allegations

8. Pennsylvania correctional institutions, including SCI Mahanoy, SCI Greene, and SCI Dallas, have two types of housing, general population and Restricted Housing Units (hereafter "solitary confinement").

9. Shoatz has been continuously held in solitary confinement for the past 21 years (since June 1991).

10. From June 1991 to January 1995, Shoatz was held in solitary confinement at SCI Dallas.

11. From January 1995 to March 28, 2013, Shoatz was held in solitary confinement at SCI Greene.

12. Presently, Shoatz is being held in solitary confinement at SCI Mahanoy.

13. For the past 21 years, Shoatz has been confined to a cell that measures approximately 7 feet x 12 feet.

14. For the past 21 years, Shoatz has been confined to a cell for 23-24 hours per day seven days per week.

15. For the past 21 years, Shoatz has been confined to a cell that is illuminated by lights 24 hours per day.

16. For the past 21 years, Shoatz has been confined to a cell that exposes him to air temperature that is colder than the air temperature in the general prison population.

17. For most of the past 21 years, Shoatz has received only 3-4 hours of sleep per night.

18. For the past 21 years, Shoatz has been confined to a cell that contains a steel bed, steel toilet and sink, steel desk and stool, and a steel cabinet.  As such, Shoatz has had little room to exercise or walk around in his cell.

19. For the past 21 years, Shoatz has been permitted to go to a fenced-in exercise pen five days per week for one hour, weather permitting. The fenced-in exercise pen contains no weights, balls, or exercise equipment of any kind.

20. For the past 21 years, Shoatz has been required to eat all meals alone in his cell.

21. For the past 21 years, Shoatz has been given only 15-20 minutes to eat his meals.

22. For the past 21 years, Shoatz has been served different food than the prisoners in the general prison population.

23. For the past 21 years, Shoatz has been permitted only three showers per week.

24. For the past 21 years, Shoatz has been prohibited from participating in educational activities.

25. For the past 21 years, Shoatz has been prohibited from participating in vocational activities.

26. For the past 21 years, Shoatz has been prohibited from participating in organizational activities.

27. For the past 21 years, Shoatz has been permitted only one non-legal visit per week.

28. For the past 21 years, Shoatz has been prohibited from having physical contact with his visitors, including with family members.

29. For the past 21 years, Shoatz has been subjected to a mandatory strip search and the possibility of a body-cavity search every time he leaves his cell.

30. For the past 21 years, Shoatz has been placed in shackles every time he leaves his cell.

31. For the past 21 years, Shoatz has been kept in shackles whenever he is moved outside his cell, including during his non-contact visits with his family.

32. For the past 21 years, Shoatz has been permitted in his cell one box measuring approximately 2.5 cubic feet to contain all personal belongings, including his clothing and medical records.

33. For the past 21 years, Shoatz has been regularly moved to a different cell at least every 90 days.

34. During the past 21 years, Shoatz has not had a contentious interaction with any prison official or staff member.

35. During the past 21 years, Shoatz has not been issued a serious misconduct.

36. During the past 21 years, Shoatz was issued only one misconduct for covering an air conditioning vent because he was cold.

37. DOC has a "no talking" policy for prisoners in solitary confinement.

38. DOC has sealed the steel doors of the cells in solitary confinement.

39. The conditions imposed upon Shoatz for the past 21 years are significantly harsher than those imposed on prisoners in general population.

40. The conditions of Shoatz's incarceration in solitary confinement almost totally deprive him of human contact, physical activity, personal property, and mental stimulation.

41. The DOC maintains a Restricted Release List (RRL). A prisoner cannot be placed on the RRL without the authorization of the Secretary. A prisoner who is on the RRL may not be released from the RRL without the authorization of the Secretary.

42. Shoatz is on the RRL. Shoatz has never been provided any reasons as to why he is on the RRL

43. Shoatz is not provided notice when he is reviewed for release from the RRL.

44. Shoatz is not provided notice of any decisions taken by any prison officials, including the DOC Secretary, to keep him on the RRL.

45. Shoatz has never been told what he must do to be removed from the RRL.

46.	Every 90 days, an entity called the Program Review Committee ("PRC") is supposed to hold a meeting to determine whether Shoatz should continue to be held in solitary confinement.

47.	The review by the PRC is a perfunctory proceeding, and the extension of Shoatz's solitary confinement is automatic.

48.	On May 22, 2012, Shoatz attended a PRC review and requested a full and detailed accounting of the evidence relied upon in continuing his solitary confinement.

49.	The PRC refused to provide that information, stating that he had already been given the reasoning on previous occasions.

50.	On May 23, 2012, Shoatz appealed the PRC review to Defendant Folino, and again requested a detailed and complete explanation of the basis for his continuing solitary confinement.

51.	On June 29, 2012, Superintendent Folino denied Shoatz's appeal and dismissed his request for a detailed and complete explanation of the basis for his continuing solitary confinement.

52.	However, the only reason given by the PRC for Shoatz's continuing solitary confinement has been that he is "an escape risk in a less secure status."

53.	During his 18 years at SCI Greene, Shoatz was never once visited by Defendant Folino.

54.	Neither the PRC nor any DOC official engages in a meaningful evaluation of whether Shoatz is an escape risk in a less secure status.

55. DOC facilities are more secure than ever. Prisoners in the general prison population are generally unable to escape. According to DOC official statistics, there has been only one escape from a DOC facility during the past ten years.

56. DOC has repeatedly refused to inform Shoatz of how he can change his behavior in order to be removed from solitary confinement.

57. In addition to the PRC review, separate security and psychological reviews are required before Shoatz can be released from solitary confinement.

58. Shoatz's most recent security review occurred on November 10, 2010. Prior to that, the last time Shoatz had a security review was on June 4, 1998.

59. Shoatz's most recent psychological review occurred on November 4, 2010. This review determined that "mental health concerns are irrelevant in considering release of [Shoatz] from [solitary confinement]."

60. The officials charged with determining whether or not Shoatz will be released from solitary confinement have little or no interaction with him prior to making their determination.

61. No meaningful attempt has been made by either the PRC or other DOC officials to determine if Shoatz is fit for release into the general population or a less restricted status.

62. Shoatz will likely spend the rest of his life isolated in solitary confinement.

63. Defendants are aware of the risks and harms inherent in long-term solitary confinement.

64.     Defendants are aware that long-term solitary confinement causes psychosis, cognitive impairment, physiological harm, and lasting, often permanent psychological trauma.

65.     Defendants are aware that long-term solitary confinement results in greater incidences of self-harm, suicide, psychological deterioration, debilitating emotional suffering, and sleep disorders.

66.     Defendants are aware that the risk of serious harm increases as time spent in solitary confinement increases.

67.     In June 1995, Thomas James, who was Special Assistant to the DOC Commissioner, conducted a review to determine whether Shoatz should remain in solitary confinement.

68.     James recognized that Shoatz's extended stay in solitary confinement (at that time four years) was atypical and unique.

69.     James admitted that holding a prisoner in solitary confinement for 90 days poses a risk of significant psychological harm and that he, therefore, typically recommends returning a prisoner to general population after just 90 days.

70.     The continuous exposure to the conditions of solitary confinement for 21 consecutive years has exposed Shoatz to an unduly high risk of psychological harm and, in fact, has caused him actual mental anguish and suffering, including increased stress, heightened anxiety, severe difficulty concentrating, short-term memory problems, chronic depression, agoraphobia, and unfathomable emotional pain and suffering.

71. Defendants are aware that Shoatz has experienced serious mental and psychological harm as a result of his extended time in solitary confinement.

72. The continuous exposure to the conditions of solitary confinement for 21 consecutive years has caused Shoatz physical injury and pain, including cataracts, prostatitis, peripheral artery disease, heel spurs, arthritis, and hypertension/high blood pressure.

73. Defendants are aware that Shoatz has experienced serious physical injury and pain as a result of his extended time in solitary confinement.

74. As a result of Defendants' acts and omissions, Shoatz has suffered severe mental anguish and other psychological damage, along with an unwarranted deprivation of the liberties and privileges granted other prisoners.

75. As a result of Defendants' acts and omissions, Shoatz has been deprived of numerous basic human needs, including environmental stimulation, social interaction, psychological health, emotional wellbeing, physical health, sleep, exercise, nutrition and fundamental human dignity.

76. Defendants' refusal to release Shoatz from solitary confinement was made with deliberate indifference to his condition, and in reckless disregard or knowing violation of his rights.

## Causes of Action

77. By the foregoing conduct, Defendants have violated Shoatz's right to be free of cruel and unusual punishment, as guaranteed by the Eighth Amendment of the United States Constitution.

78. Shoatz is likely to remain in solitary confinement for the foreseeable future and, as a result, is likely to suffer continuing and debilitating psychological and physical injury, pain, and suffering.

79. Continuing to keep Shoatz in solitary confinement is in violation of contemporary standards of human decency and constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

80. By the foregoing conduct, Defendants have subjected and continue to subject Shoatz to an atypical and significant hardship, and have violated and continue to violate Shoatz's right to procedural and substantive due process, as guaranteed by the Fourteenth Amendment of the United States Constitution.

## Prayer for Relief

WHEREFORE, plaintiffs pray that this Honorable Court grant the following relief:

A. Declare Defendants' conduct unlawful;

B. Enjoin and restrain Defendants from incarcerating Shoatz in solitary confinement or other similar conditions and order Shoatz's placement in the general population;

C. Award compensatory damages;

D. Award punitive damages;

E. Grant attorneys' fees and costs;

F. Trial by jury; and

G. Such other relief as the Court deems just and proper.

Respectfully submitted,

*s/ Richard L. Etter*
Richard L. Etter
PA I.D. No. 92835
Stefanie A. Lepore
PA I.D. No. 312998
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA  15222-2716
Telephone:  (412) 288-3806/3877

Daniel M. Kovalik
PA I.D. No. 69065
Five Gateway Center
Pittsburgh, PA 15222
Telephone:  (412) 562-2518

Dustin McDaniel
PA I.D. No. 314618
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221
Telephone: (412) 651-7485

*Attorneys for Plaintiff Russell Shoatz*

Dated:  May 8, 2013