**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RUSSELL SHOATZ, a/k/a RUSSELL SHOATS, } | |
| } | No. 13-657 |
| Plaintiff, } | |
| } | Magistrate Judge Eddy |
| vs. } | |
| } | |
| JOHN E. WETZEL, ET AL., } | ***Electronically Filed.*** |
| } | |
| Defendants. } | |

**BRIEF IN SUPPORT OF**
**CORRECTIONS DEFENDANTS' MOTION TO DISMISS COMPLAINT**

**I. STATEMENT OF THE CASE**

Plaintiff, Russell Shoatz ("Shoatz") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). Shoatz is currently lodged at the State Correctional Institution at Mahanoy ("SCI-Mahanoy").  Shoatz initiated this counseled prisoner civil rights action by filing a civil complaint on May 8, 2013.  See Complaint (Doc. # 1).

Shoatz was "[s]entenced to life in prison without the possibility of parole in 1972."  See Complaint, at p. 2.  Shoatz "has been held in solitary confinement continuously for the past 21 years (since June 1991) at the State Correctional Institutions at Mahanoy ("SCI Mahanoy"), Greene ("SCI Greene") and Dallas ("SCI Dallas").  Id., at ¶ 4.  Named as defendants in this action are the Secretary of Corrections, John E. Wetzel, and the Superintendents of SCI-Greene, Louis S. Folino, and SCI-Mahanoy, John Kerestes.  Id., at ¶¶ 5-7.

Shoatz alleges that his Eighth Amendment right against cruel and unusual punishments is violated by his long term placement in solitary confinement in the DOC's Restricted Housing Units and by placement on the DOC's Restricted Release List.  See Complaint, at ¶ 80.  Shoatz also alleges that such placements violate his Fourteenth Amendment due process rights.  See

Complaint, at ¶¶ 77-79.  Shoatz seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  See Complaint, at p. 12 ("Prayer for Relief").  All of the Defendants have waived service of the Complaint, see (Docs. # 5-7), and now move to dismiss the Complaint.

## II.  STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)(rejecting the "no set of facts" standard").  The plaintiff must "nudge [his or her] claim across the line from conceivable to plausible" in order to survive a motion to dismiss.  Phillips, 515 F.3d at 234 (citing Twombly, 127 S.Ct. at 1974).  This plausibility requirement means that the complaint must provide enough factual matter to suggest the required element of the claim. Id.  In other words, it calls for "enough facts to state a claim to relief that is plausible on its face." Barber v. Pennsylvania State Police, 2007 WL 2071896, at *2 (W.D.Pa. 2007)(citing Twombly, 127 S. Ct. at 1974).  The Court need not accept legal conclusions or inferences drawn by plaintiff if unsupported by the facts set forth in the complaint.  Id. (citing California Public Employees Retirement System v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004).  See also Twombly, 127 S. Ct. at 1965).

The United States Supreme Court has made it clear that the Twombly standard applies to Section 1983 claims.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-81 (2009).  Further, the Supreme Court in Iqbal identified "[t]wo working principles" supporting the Court's earlier decision in

Twombly.  The court first noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice....  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

Iqbal, 556 U.S. at 678-679.

Secondly, the Court concluded that "only a complaint that states a plausible claim for relief survives a motion to dismiss....  where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. (citing Fed. R.Civ. P. 8(a)(2)).

### III.  ARGUMENT

**A.  Plaintiff's allegations regarding the conditions of his confinement fail to state a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishments.**

Shoatz first alleges a violation of his Eighth Amendment right against cruel and unusual punishments based on circumstances where he has been held in Administrative Custody status pursuant to the DOC's Restricted Release List policy.  See Complaint, at ¶ 77-79.  Shoatz specifically alleges, *inter alia*, that he "has been continuously held in solitary confinement for the past 21 years (since June 1991)," see Complaint, at ¶¶ 9-13; and that during that time he has been confined to a small (approximately 7 feet x 12 feet) cell "for 23-24 hours per day seven days per week," see Complaint, at ¶¶ 13-14.  Shoatz asserts that his cell "exposes him to air temperature that is colder than the air temperature in the general prison population," see Complaint, at ¶ 16; and that he "has received only 3-4 hours of sleep per night," see Complaint, at ¶ 17.

Shoatz contends that his cell provides "little room to exercise or walk around in" and that the "fenced-in exercise pen" to which he is permitted access "five days per week for one hour, weather permitting … contains no weights, balls, or exercise equipment of any kind," <u>see</u> Complaint, at ¶¶ 18-19.  Shoatz "has been required to eat all meals alone in his cell" and is "given only 15-20 minutes to eat his meals," <u>see</u> Complaint, at ¶¶ 20-21.  Shoatz has been permitted only three showers per week, <u>see</u> Complaint, at ¶ 23.

Shoatz "has been prohibited from participating in educational activities, … vocational activities [and] organizational activities," <u>see</u> Complaint, at ¶¶ 24-26.  Shoatz has been limited in the number of visits he can receive and such visits are limited to non-contact visits," <u>see</u> Complaint, at ¶¶ 27-28.

Shoatz is confined in a high security housing unit and is subject to close security at all times," <u>see</u> Complaint, at ¶¶ 29-31, 33, 37-38.  Shoatz is limited in the amount of personal property he can maintain in his cell," <u>see</u> Complaint, at ¶ 32.  Shoatz further alleges that

> 39.    The conditions imposed upon Shoatz for the past 21 years are significantly harsher than those imposed on prisoners in general population.
>
> 40.    The conditions of Shoatz incarceration in solitary confinement almost totally deprive him of human contact, physical activity, personal property, and mental stimulation.
>
> 70.    The continuous exposure to the conditions of solitary confinement for 21 consecutive years has exposed Shoatz to an unduly high risk of psychological harm and, in fact, has caused him actual mental anguish and suffering, including increased stress, heightened anxiety, severe difficulty concentrating, short-term memory problems, chronic depression, agoraphobia, and unfathomable emotional pain and suffering.
>
> 72.    The continuous exposure to the conditions of solitary confinement for 21 consecutive years has caused Shoatz physical injury and pain, including cataracts, prostatitis, peripheral artery disease, heel spurs, arthritis, and hypertension/high blood pressure.

74.     As a result of Defendants' acts and omissions, Shoatz has suffered severe mental anguish and other  psychological damage, along with an unwarranted deprivation of the liberties and privileges granted other prisoners.

Complaint, at ¶¶ 39-40, 70, 72, 74.

Nevertheless, the Complaint fails to state a claim under the Eighth Amendment's prohibition against cruel and unusual punishments.   This Court has recently provided the following exposition of Eighth Amendment jurisprudence applicable to the case *sub judice*:

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1991).   But, 'not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights.'   Booth v. King, 228 Fed.Appx 167, 171 (3d Cir. 2007).  Cruel and unusual punishment will only be found 'where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities.'  Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990).

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates received adequate food, clothing, shelter, and medical care, and must 'take reasonable measure to guarantee the safety of the inmates.'  Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show 'he has suffered an objectively, sufficiently serious injury, and that prison officials inflected the injury with deliberate indifference.'   Farmer, 511 U.S. at 834.   An objectively, sufficiently serious injury is one that denies the inmate 'the minimal civilized measure of life's necessities,' such as food, water, and shelter. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000).

As to the first requirement, 'prison conditions violate the Eighth Amendment if they result in the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime warranting imprisonment, or result in an unquestioned and serious deprivation of basic human needs.'  Robinson v. Carr, 99 F.3d 1150 (Table)(10th Cir. 1991) quoting Rhodes, 452 U.S. at 346-47.  As to the second requirement, deliberate indifference is a difficult standard to meet:  1) a prison official

> must know of and disregard an excessive risk to inmate health or safety; 2)
> the official must be aware of facts from which an inference could be drawn
> that a substantial risk of serious harm exists, and 3) the official must also
> draw the inference. Farmer, 511 U.S. at 837.

Henry v. Overmyer, 2012 WL 253186, *3-*4 (W.D.Pa. 2012). Cf. Allah v. Hayman, 442 Fed.Appx. 632, 635 (3d Cir. 2011)("[t]o state a claim under the Eighth Amendment, a prisoner must show that the defendants acted with deliberate indifference. To act with deliberate indifference is to recklessly disregard a substantial risk of serious harm")(citing Estelle v. Gamble, 429 U.S. 97, 104-105 (1976) and Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

In Bowen v. Ryan, 2006 WL 3437287 (M.D.Pa. 2006), the inmate-plaintiff alleged that "his placement in administrative custody for a period of over 20 years is in violation of his Eighth Amendment rights." Id., at *14. The Bowen court initially acknowledged that "the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment, guarantees that prison officials must provide humane conditions of confinement" and that "[p]ursuant to the Eighth Amendment, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)(quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). The court then set forth the applicable legal standard:

> In order to state an Eighth Amendment claim, the plaintiff must establish
> that the condition, either alone or in combination with other conditions,
> deprived him of 'the minimal civilized measure of life's necessities,' or at
> least a 'single, identifiable human need.' Wilson v. Seiter, 501 U.S. 294,
> 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)(citations omitted). Moreover, the
> plaintiff must establish deliberate indifference to prison conditions on the
> part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297.
> This second prong requires the court to subjectively determine whether
> prison officials acted with a sufficiently culpable state of mind. Id. '[O]nly
> the unnecessary and wanton infliction of pain implicates the Eighth
> Amendment.' Farmer, 511 U.S. at 834.

Id.

In support of his Eighth Amendment claim, the inmate in <u>Bowen</u> "allege[d] that his placement in administrative custody for a period in excess of twenty years has caused him to suffer '... extreme mental anguish, weight loss, sensory deprivation, depression stress, fatigue, insomia (sic), loss of some of his general population privileges, including contact visits with his family, ...'" <u>Id.</u> (citation to record omitted).  Similarly, as enumerated above, Shoatz has herein alleged that he has been held in solitary confinement since June of 1991; that the conditions of solitary confinement deprive him "of human contact, physical activity, personal property, and mental stimulation." <u>See</u> Complaint, at ¶ 40.   Shoatz further alleges that "[a]s a result of Defendants' acts and omissions, Shoatz has been deprived of numerous basic human needs, including environmental stimulation, social interaction, psychological health, emotional wellbeing, physical health, sleep, exercise, nutrition and fundamental human dignity." <u>See</u> Complaint, at ¶ 75.

Nevertheless, the <u>Bowen</u> court found that such allegations failed to establish a claim under the Eighth Amendment.  Said the court,

> The fact that the plaintiff was confined in administrative custody, itself, does not state a claim upon which relief may be granted. <u>See</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997)(restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).  Moreover, the fact that the plaintiff was deprived those privileges afforded those in the general population does not constitute a deprivation of 'the minimal civilized measure of life's necessities.'  Therefore, the plaintiff has failed to sufficiently set forth an Eighth Amendment claim, and the defendants' motion to dismiss should be granted on this basis.

<u>Bowen v. Ryan</u>, 2006 WL 3437287, at *14.

As noted above, "prison officials must ensure that inmates received adequate food, clothing, shelter, and medical care, and must 'take reasonable measure to guarantee the safety of the inmates.'" <u>Henry v. Overmyer</u>, 2012 WL 253186, at *3 (<u>quoting</u> <u>Hudson v. Palmer</u>, 468

U.S. at 526-527).   Indeed, "[o]nly 'extreme deprivations' are sufficient to make out an Eighth

Amendment claim.  See White v. Bledsoe, 2010 WL 1754581, *4 (M.D.Pa. 2010)(citing Hudson

v. McMillan, 503 U.S. 1, 9 (1992)).

> Therefore, only those deprivations denying the 'minimal civilized measure
> of life's necessities,' including food, shelter, water, safety, sanitary
> conditions, and medical treatment, qualify as sufficiently grave to form the
> basis of an Eighth Amendment violation.  Rhodes v. Chapman, 452 U.S.
> 337 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

White v. Bledsoe, 2010 WL 1754581, at *4.

Yet, in his Complaint, Shoatz acknowledges that he has been provided with shelter, the

opportunity to exercise, food, access to showers, and non-contact visits.  See Complaint, at ¶¶ 13,

19, 20-22, 23, 27-28.  Moreover, Shoatz does not allege that he has been exposed to unsanitary

conditions or that he had been denied access to medical and/or psychological care and treatment

or that he is unsafe.  Id., generally.  Finally, to the extent that Shoatz is claiming that the Eighth

Amendment guarantees "basic human needs, including environmental stimulation, social

interaction, psychological health, emotional wellbeing, physical health, sleep, exercise, nutrition

and fundamental human dignity," Id., at ¶ 75, it is submitted that such considerations have either

been provided by the DOC's Administrative Custody regime or are not properly found within the

Eighth Amendment's guarantee of the "minimal civilized measure of life's necessities."  See,

e.g., Dockery v. Beard, 2013 WL 139624, *4 (3d Cir. 2013)("As an initial matter, we have

previously held that the conditions in restrictive housing units in Pennsylvania prisons do not

violate the Eighth Amendment")(citing Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997));

Laurensau v. Romarowics, 2012 WL 6651344, *12 (W.D.Pa. 2012)("the Courts are unanimous

in holding that the conditions in restrictive housing in Pennsylvania prisons do not, in and of

themselves, violate the Eighth Amendment")(citing cases).

In <u>Ball v. Lamas</u>, 2012 WL 895942, *14 (M.D.Pa. 2012), the court addressed a *pro se*

inmate challenge to the living conditions in the Pennsylvania DOC's Restricted Housing Units.

In dismissing the claim, the court stated as follows:

> Fairly construed, much of what can be discerned from this amended
> complaint is essentially a general critique of the conditions of confinement
> which confront disruptive inmates in the restricted housing units of
> Pennsylvania's state prisons.  Without in any way diminishing these stark
> conditions of confinement, which are compelled by security concerns
> stemming from the nature of the inmate population housed in these units,
> we note that any general constitutional challenge to conditions at these
> restricted housing units fails because 'the federal ... courts unanimously
> have found that the ... conditions of confinement in the various restrictive
> housing units in the Pennsylvania state institutions, ..., without more, do[ ]
> not violate the [constitution].  Therefore, this amended complaint may not
> serve as a vehicle for a general attack upon the penal system in
> Pennsylvania's RHU units.

<u>Ball v. Lamas</u>, 2012 WL 895942, at *14 (cited cases omitted).[1]

While the present counseled complaint is likely more lucid and articulate than the *pro se*

complaint in <u>Ball v. Lamas</u>, it nonetheless appears to be nothing more than "a general attack

upon the penal system in Pennsylvania's RHU units;" more specifically, a general attack on the

conditions imposed by the DOC's Administrative Custody regime for those inmates on RRL

status.  Yet, the Eighth Amendment is no more violated by Shoatz' allegations than by the

allegations of the other inmates who have unsuccessfully travelled this same path.  Accordingly,

Shoatz fails to state a claim under the Eighth Amendment based on the conditions he is subject to

under the DOC's Administrative Custody regime while he remains on RRL status.

### B.  **Plaintiff's Fourteenth Amendment procedural due process claim is barred by the doctrine of claim preclusion or *res judicata*.**

As alleged in the Complaint, Shoatz is serving a life sentence in conditions of solitary

confinement.  Shoatz contends that his placement and continued confinement in such conditions

---

[1] *Report and Recommendation Adopted by* <u>Ball v. Lamas</u>, 2012 WL 895935 (M.D.Pa. 2012).

violate both his procedural and substantive due process rights.  Indeed, Shoatz concludes in his

Complaint that "Defendants have subjected and continue to subject Shoatz to an atypical and

significant hardship, and have violated and continue to violate Shoatz' right to procedural and

substantive due process, as guaranteed by the Fourteenth Amendment of the United States

Constitution."  See Complaint, at ¶ 80.  However, Shoatz has previously made an unsuccessful

challenge to the precise conditions involved *sub judice*.  Consequently, at least the present

procedural due process claim is barred by the doctrine of claim preclusion or *res judicata*.

> The doctrine of claim preclusion, traditionally known as *res judicata*, '... generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'  New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  Claim preclusion bars a plaintiff from asserting a cause of action that could have been raised and decided in a prior suit.  CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 195 (3d Cir. 1999).  Application of the doctrine requires: "'(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action."'  Id. at 194, quoting Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (1992).  'In deciding whether two suits are based on the same "cause of action," we take a broad view, looking to whether there is an "essential similarity of the underlying events giving rise to the various legal claims."'  Id., quoting United States v. Athlone Indus., 746 F.2d 977, 984 (3d Cir. 1984).

Spencer v. Courtier, 2011 WL 2670198, *6 (W.D.Pa. 2011).

Instantly, all three elements of claim preclusion are met with respect to Shoatz'

procedural due process claim:  Shoatz has of course filed the present action, docketed in this

Court at No. 2:13-cv-00657-CRE under the caption *SHOATZ v. WETZEL et al.*, against John E.

Wetzel, in his official capacity as Secretary of the Pennsylvania Department of Corrections;

Louis S. Folino, in his official capacity as Superintendent of the State Correctional Institution at

Greene; and John Kerestes, in his official capacity as Superintendent of the State Correctional

Institution at Mahanoy.[2]   It can be fairly said that in the present action Shoatz is challenging, *inter alia*, his continued confinement in solitary confinement under the procedural due process clause of the Fourteenth Amendment.  See, e.g., Complaint, at ¶ 80.

Shoatz, represented by at least one of his current counsel, previously filed an action against several former Department of Corrections officials ("the DOC officials") in this Court on or about October 2, 1997.  The named defendants in that action were Martin Horn, in his official capacity as the Commissioner of the Pennsylvania Department of Corrections, and Ben Varner and Philip Johnson, in their official capacity as Superintendent of the State Correctional Institution at Greene.[3]   This counseled civil rights action was docketed in this Court at No. 2:97-cv-01811-GLL-IJS under the caption *SHOATS v. HORN, et al.*  Shoatz was the Plaintiff in the prior action and the current Corrections Defendants, Wetzel, Folino and Kerestes, are certainly successors to and in privity with Horn, Varner and Johnson.  This then satisfies the requirement that there be "a prior suit involving[ ] the same parties or their privies."

Both parties subsequently filed respective motions for summary judgment and, by Report and Recommendation (Doc. # 40) entered on May 28, 1999, the Magistrate Judge recommended that the DOC's motion be granted and that Shoatz' motion be denied.  Thereafter, following the filing and consideration of Shoatz' Objections (Doc. # 41) and the DOC's Response (Doc. # 42), the District Court granted the DOC's motion for summary judgment and denied Shoatz' motion for summary judgment, adopting the Magistrate Judge's Report and Recommendation as the Opinion of the court.  See Order of Court, July 8, 1999 (Doc. # 43).

---

[2] Shoatz is currently confined at SCI-Mahanoy and was previously confined at SCI-Greene.  See Complaint, at ¶¶ 4, 9-12.

[3] By Court Order entered on July 14, 1998, on Shoatz' motion, Philip Johnson was substituted as a defendant for Ben Varner.  See Order of Court, July 14, 1998, at No. 2:97-cv-01811-GLL-IJS.

On appeal, the Third Circuit construed Shoatz' claim as "challeng[ing] his continued confinement in administrative custody, *i.e.*, solitary confinement.  Shoats claims that Appellees, the Pennsylvania Department of Corrections and Philip Johnson, Superintendent of SCI-Greene, have kept him in administrative custody in violation of his Fourteenth Amendment right to procedural due process.  He seeks immediate release into the general prison population, damages, and other relief."  Shoats v. Horn, 213 F.3d 140, 141 (3d Cir. 2000).  The Third Circuit, after finding that Shoats "has a protected liberty interest in being released from administrative confinement,' nevertheless "conclude[d] that SCI-Greene's procedures for evaluating whether Shoats should remain in administrative custody comported with procedural due process requirements.  Accordingly, we will affirm."  Id.

Thus, there is also "a final judgment on the merits in a prior suit … and … a subsequent suit based on the same cause of action."  Indeed, it would appear that the Third Circuit's holding in Shoats v. Horn still applies to the instant circumstances.  Initially, then, the doctrine of claim preclusion –or the principles of *res judicata*– would preclude Shoatz from relitigating his Fourteenth Amendment procedural due process claim.

Moreover, Shoatz has not alleged any significant or meaningful change in the underlying circumstances of his procedural due process claim that would dictate or require a different result than the one reached by the Third Circuit in Shoats v. Horn, supra.  Indeed, Shoatz is still challenging his placement and continued imprisonment under conditions of solitary confinement on procedural due process grounds.  This precise claim was addressed by this Court in *SHOATS v. HORN, et al.* at No. 2:97-cv-01811-GLL-IJS and affirmed by the Third Circuit in a published opinion.  See Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000).  Accordingly, it cannot again be advanced in the present action.  The following argument proceeds in the alternative:

**C.** **Plaintiff's allegations regarding the conditions of his confinement and his placement on the DOC's Restricted Release List fail to state a violation of Plaintiff's due process rights as protected by the Fourteenth Amendment.**

*Procedural Due Process.* Shoatz cannot in any event state a justiciable claim under the Due Process Clause of the Fourteenth Amendment. Initially, to the extent that any Fourteenth Amendment procedural due process claim is based on Shoatz placement in Administrative Custody status on the Restricted Release List ("RRL"), no claim is stated. The federal courts in Pennsylvania have had several occasions to address the interplay between the Fourteenth Amendment and the DOC's Administrative Custody regime and it's Restricted Release List. Beginning with Judge Munley's decision in <u>Bowen v. Ryan</u>, 2006 WL 3437287 (M.D.Pa. 2006), several opinions have been written, all of which conclude that the DOC's Administrative Custody regime and the RRL do not violate the Fourteenth Amendment. Moreover, these cases largely rely upon the Third Circuit's decision in <u>Shoats v. Horn</u>, 213 F.3d 140 (3d Cir. 2000), to reach this result. For example, in <u>Bowen v. Ryan</u>, Judge Munley wrote

> With respect to the plaintiff's due process claim, a procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements. <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000).
>
> Under the first step of the procedural due process analysis, a liberty interest can arise in one of two ways: (1) it can be derived directly from the Due Process Clause of the Federal Constitution, or (2) it can arise from the law of the state. <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 408 (3d Cir. 1999).
>
> It is well established that there is no liberty interest created directly by the Fourteenth Amendment that requires or permits an inmate to be placed in and/or to remain in the general population of a jail. <u>See Hewitt v. Helms</u>, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Therefore, the plaintiff has no liberty interest arising from the Due Process

Clause that would prevent his placement in administrative custody.  It must then be determined whether the plaintiff has a state created liberty interest.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court addressed the issue of state created liberty interests.  In doing so, the Court held that a state government 'may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  Id. at 483.  Whether an inmate has suffered an 'atypical and significant hardship' as a result of confinement depends on two factors: (1) the amount of time an inmate was placed in disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in solitary confinement.  Shoats, 213 F.3d at 144.

In Shoats, supra, the court found an atypical and significant hardship where inmate had spent eight years in solitary confinement.  Given this, it is clear that the plaintiff's placement in administrative custody for a period of over twenty years would impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a state created protected liberty interest.  The issue then becomes whether the plaintiff received the process he was due for his confinement.

In Shoats, the Third Circuit set forth what due process requirements must be afforded to long term administrative custody inmates.  As previously discussed, in that case, the inmate had been confined in administrative custody for over eight years, with the possibility of confinement for the rest of his life.  Despite this, the Third Circuit determined that the plaintiff had received all the due process protections to which he was entitled because he had received periodic review of his administrative custody status through DC-ADM 802.  Shoats, 213 F.3d at 146.  Moreover, the court noted that the plaintiff was confined in administrative custody because he was 'in the considered judgment of all the prison professionals who have evaluated him, a current threat to the security and good order of the institution, and to the safety of other people.'  Id. at 146.  This determination was based on both the inmate's history and on 'prison professionals' current impressions of him based on their day-to-day dealings with him over time.'  Id.  The Shoats court stated:

> In assessing the seriousness of a threat to institutional security,
> prison administrators necessarily draw on more than the specific
> facts surrounding a particular incident; instead, they must consider

the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior.

Id.

  Given the court's language in <u>Shoats</u>, the length of time spent in administrative custody is not, alone, an indication of a due process violation.  Instead, the inmate's situation, as a whole, must be examined.

  Here, the plaintiff admits that he had hearings and appeals pursuant to the provisions set forth in DC-ADM 802.  He argues, however, that they were 'rote' and 'meaningless' because the PRC does not have the authority to release him.  Prior to May of 2004, the PRC could make the decision to release an inmate on the Restricted Release List into the general population.  Effective May 5, 2004, however, DC-ADM 802 was amended to provide that inmates whose names appear on the Restricted Release List cannot be released from administrative custody without the approval of the Secretary of the DOC or his designee.  This amendment simply recalled the prior delegation of authority to the PRC to determine if an inmate on the Restricted Release List could be released into the institution's general population.  Because the PRC can still recommend the plaintiff's release to general population, the reviews provided by DC-ADM 802 are not 'rote' or 'meaningless.'

  Moreover, the decision to maintain the plaintiff's administrative custody status, according to the records before the court, is due to his own history.  To this extent, the PRC has indicated:

  PRC believes that if Mr. Bowen were released into the general population he would be a threat to the safety and security of this institution. This determination is based on a record review that documents a significant history of extreme violence. There are numerous incidents of attempted escapes and creating institutional disorder. Documented incidents demonstrate that he will go to any length to achieve what he wants and they also demonstrate his blatant disregard for the lives of others. Some of the incidents resulted in the death of Corrections staff members.

(Doc. No. 15, Ex. 2).

Court records indicate that the plaintiff was convicted and sentenced in 1973 in the Philadelphia County Court of Common Pleas on two counts of first degree murder.  These convictions were for the murder of the warden and deputy warden at Holmesburg Prison committed when the plaintiff attempted to escape.  In addition, the plaintiff was convicted of kidnaping and holding for ransom in Montgomery County.  With respect to this conviction, while at Graterford in 1981, the plaintiff took hostages, both staff and inmates, and held them for five days by using firearms.

Considering all of the above, the plaintiff's continued confinement in administrative custody comports with the procedural due process requirements upheld by the Third Circuit in <u>Shoats</u>.  It is not for the court to second guess prison officials' decision with respect to security issues.  <u>See e.g.</u>, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.").  Therefore, the defendants' motion to dismiss the plaintiff's procedural due process claim should be granted.

<u>Bowen v. Ryan</u>, 2006 WL 3437287, at *11-*14 (footnotes omitted).

The district court's decision in <u>Bowen v. Ryan</u> was subsequently affirmed by the Third

Circuit, with the court finding that Bowen's "claim that he was placed on the Restricted Release

List without due process was properly dismissed."  Said the court:

Placement on this List did not deprive Bowen of his liberty, privileges, or any other constitutionally protected liberty interest.  <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  To the extent that the complaint can be read as challenging the process by which Bowen was initially confined in Administrative Custody, it fails to allege the lack of a hearing, inadequate opportunity to be heard, or other procedural shortcoming that would implicate his due process rights.[1]

We agree with the District Court's analysis of Bowen's constitutional challenge to his confinement in Administrative custody.  While twenty years in administrative custody is clearly an atypical and significant hardship sufficient to trigger the procedural protections of the Due Process Clause, implicating a liberty interest within the contemplation of the Fourteenth Amendment, the procedures provided by the Pennsylvania Department of Corrections satisfy the minimal constitutional standards for due process.  <u>See</u> <u>Shoats</u>, 213 F.3d at 143-45.  Bowen was afforded an initial opportunity to be heard upon confinement, and periodic review of his

16

status.  See id. at 146-47.  Like the District Court, we reject appellant's conclusory allegations that the periodic reviews by the PRC were rote or meaningless.  The 2004 change in the review process neither made it meaningless, as the PRC retains the power to recommend release to an official with the power to order it, nor violated Pennsylvania's Commonwealth Documents Law.  See Small v. Horn, 554 Pa. 600, 722 A.2d 664, 669-70 (1998).

_____
[1] While we do not disagree with the District Court's decision to treat parts of this claim as barred by the applicable statute of limitations, we instead follow the course taken in Shoats v. Horn, 213 F.3d 140, 145-46 (3d Cir. 2000), and address the due process claim on the merits.

Bowen v. Ryan, 248 Fed.Appx. 302, 304-305 (3d Cir. 2007).  See also Washington-El v. Beard, 2013 WL 1314528, *8 (W.D.Pa. 2013)(citing cases)("The Third Circuit has repeatedly affirmed the holding in Shoats that post-transfer periodic review comports with due process requirements for prisoners serving lengthy sentences who are housed in restricted administrative custody for indefinite periods of time").

Other Pennsylvania courts confronted with this issue have similarly found no violation of the Fourteenth Amendment.  See, e.g., Leaphart v. Palakovich, 2011 WL 7070957, *4 (M.D.Pa. 2011)("Relying upon the leading appellate case in this field, Shoats v. Horn, 213 F.3d 140(3d Cir. 2000), we noted that in Shoats, after detailing the process provided by the Pennsylvania DOC to an inmate confined in administrative custody, the Third Circuit concluded that these procedures clearly complied with due process requirements.  Shoats, 213 F.3d at 145")(footnote omitted)[4]; Nifas v. Beard, 2009 WL 3241871, *15 (W.D.Pa. 2009)("even if Plaintiff did establish a genuine issue of material fact with respect to the existence of a liberty interest, he has failed to show that the process that he did receive in connection with his being placed on AC and or being placed on the RRL was constitutionally inadequate").  See also Brown v. Beard, 2011

_____
[4] Report and Recommendation Adopted by Leaphart v. Palakovich, 2012 WL 175426 (M.D.Pa. 2012).

WL 1085890 (W.D.Pa. 2011); Hill v. Fisher, 2010 WL 6004059 (M.D.Pa. 2010). Cf. Dockery v.

Legget, 2012 WL 2872554, *25 (W.D.Pa. 2012)("it is well settled in Pennsylvania that periodic

review of inmates indefinitely confined in administrative confinement comports with due process

requirements").

Thus, Shoatz fails to state a Fourteenth Amendment procedural due process claim based

on his placement and continued imprisonment under conditions of solitary confinement based on

the DOC's Administrative Custody regime and it's Restricted Release List.

*Substantive Due Process.* To the extent that Shoatz asserts a substantive due process

claim, such a claim must also fail.[5] As the Third Circuit has again recently confirmed,

> [c]ertain fundamental rights are substantively protected by the
> Fourteenth Amendment's due process clause. See White v.
> Napoleon, 897 F.2d 103, 111 (3d Cir.1990). A claim alleging a
> substantive due process violation requires a showing of behavior
> that can 'properly be characterized as arbitrary, or conscience

---

[5] Initially, because Shoatz argues that the conditions to which he is subject pursuant to the DOC's Administrative Custody regime and as a consequence of his placement on the RRL violate the Eighth Amendment, the Corrections Defendants assert that any substantive due process claim on the same basis is precluded by the "explicit source" rule articulated by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989) and its progeny. Indeed, as this Court has noted, "The Supreme Court has held that where a particular provision of the Bill of Rights provides an explicit source of constitutional protection against a specific category of governmental action, the more generalized notion of 'substantive due process' is inapplicable. Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(plurality opinion). Here, the Court understands Plaintiffs to agree that the Fourth Amendment provides the "explicit textual source of constitutional protection" against an officer's use of excessive force. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(holding that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and not under a "substantive due process" approach)." Swaney v. Jordan, 2011 WL 1485969, *3 n. 3 (W.D.Pa. 2011). Although Swaney arose in the context of a Fourth Amendment case, the principle applies equally to an Eighth Amendment case. See, e.g., Ford v. Curtin, 2012 WL 2089847, *10 (W.D.Mich. 2012)("to the extent Plaintiff complains about his conditions of confinement, there is a more explicit source of constitutional protection in the Eighth Amendment. Therefore, Plaintiff cannot raise a substantive due process claim")(citation to opinion omitted). See also Perez v. Pugh, 2013 WL 1855996 (N.D.Ohio 2013); Gillis v. Pollard, 2012 WL 5510654 (E.D.Wis. 2012).

> shocking.'  County of Sacramento v. Lewis, 523 U.S. 833, 847,
> 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); see also Newman v.
> Beard, 617 F.3d 775, 782 (3d Cir. 2010)("Conduct can violate
> substantive due process if it shocks the conscience, which
> encompasses only the most egregious official conduct.").

Turner v. Attorney General Pennsylvania, 505 Fed.Appx. 95, 99 (3d Cir. 2012).  See also Israel

v. Superintendent of S.C.I. Fayette, 2009 WL 693248, *7-*10 (W.D.Pa. 2009).

In Turner, the Third Circuit concluded that the plaintiff's substantive due process claim

was properly dismissed because the defendants' conduct was within their discretion and

therefore "was not arbitrary and did not '"shock[ ] the conscience."'" Id. (citing Chainey v.

Street, 523 F.3d 200, 219 (3d Cir. 2008)(quoting United Artists Theatre Circuit, Inc. v. Township

of Warrington, 316 F.3d 392, 400 (3d Cir. 2003)).

Instantly, the Corrections Defendants have the discretion and authority to place and

maintain Shoatz in Administrative Custody status on the Restricted Release List.  Moreover, the

DOC has written policies which govern both the Administrative Custody regime and the

Restricted Release List.  Shoatz makes no allegation that the Corrections Defendants ignored or

acted contrary to these written policies.  Thus, it cannot be gainsaid that the Corrections

Defendants' conduct at issue  was arbitrary or otherwise conscience shocking.  Consequently, no

substantive due process claim is stated under the Fourteenth Amendment.

***Restricted Release List.***  Finally, to the extent that Shoatz is independently challenging

his placement on the Restricted Release List ("RRL"), see Complaint, at ¶¶ 41-56, such claims

have been definitively found lacking by the courts.  Indeed, this Court has recently addressed just

such a claim and concluded that the inmate "is mistaken insofar as he assumes that his placement

on the RRL implicated a constitutionally protected due process right.  Per DOC policy, the RRL

is simply

19

> [a] list of inmates who are restricted from release from AC status
> without the prior approval of the Secretary [or his] designee. An
> inmate may be placed on this list when he/she poses a threat to the
> secure operation of the facility and where a transfer to another
> facility or jurisdiction would not alleviate the security concern.

(Defs.' Ex. A [79-1] at p. 19.) As one court has explained,

> [Both] RRL and non-RRL inmates have their custody status
> periodically reviewed by the [Program Review Committee]. Non-
> RRL inmates can be released into general population by the PRC
> or Superintendent. See DC-ADM 802, Section 4(A). Release of an
> RRL inmate into general population, however, requires the
> approval of the Secretary of correction or his or her designee,
> though the PRC may recommend release. See id. In all other
> respects, RRL inmates are treated identically to their non-RRL
> counterparts on AC-status.

Leaphart v. Palakovich, 3:11-CV-1333, 2012 WL 175426 at *3 (M.D.Pa.
Jan. 20, 2012).

Thus, placement on the RRL merely adds another layer of review relative
to the decision to release an inmate from administrative custody back to
general population; it does not involve any added deprivation of liberty as
to which due process rights attach. See Bowen v. Ryan, 248 Fed.Appx.
302, 304 (3d Cir. 2007)(affirming dismissal of prisoner's claim that he was
placed on the RRL without due process because "[p]lacement on the List
did not deprive Bowen of his liberty, privileges, or any other
constitutionally protected liberty interest"); Carter v. Beard, 2012 WL
1414446 at *3 (M.D.Pa. April 24, 2012)(noting that the "Third Circuit has
held ... that placement on the RRL does not deprive an inmate of a liberty
interest triggering due-process protection")(citing Bowen, supra, at 304);
Leaphart, supra, at *3 ("Plaintiff's placement on RRL did not violate his
due process rights since it did not impose an atypical and significant
hardship on the inmate in relation to the ordinary incidents of prison life.").
Accordingly, even if Plaintiff never received a separate notice and hearing
relative to his placement on the RRL, no due process violation occurred
with respect to that particular administrative decision.

Huertas v. Beard, 2012 WL 6061041, *10-11 (W.D.Pa. 2012). See also Washington-El v. Beard,

2013 WL 1314528, *9-*10 (W.D.Pa. 2013).

Shoatz' allegations regarding his placement and/or maintenance on the DOC's Restricted

Release List fail to state a claim. Accordingly, Shoatz' Fourteenth Amendment due process

challenge with respect to his placement and/or maintenance on the DOC's Restricted Release List should be dismissed.

## IV.  CONCLUSION

WHEREFORE, the Defendants respectfully request that the instant motion be granted and that the Complaint (Doc. # 1) be dismissed.

Respectfully submitted,

KATHLEEN G. KANE
Attorney General


    s/ Scott A. Bradley
Office of Attorney General                 Scott A. Bradley
6th Floor, Manor Complex                   Senior Deputy Attorney General
564 Forbes Avenue                          Attorney I.D. No. 44627
Pittsburgh, PA 15219
Phone: (412) 565-3586                      Gregory R. Neuhauser
Fax:    (412) 565-3019                     Chief Deputy Attorney General

Date:  July 3, 2013