# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL SHOATZ a/k/a RUSSELL SHOATS, | Civil Action No. 2: 13-cv-0657 |
| Plaintiff, | United States District Magistrate Cynthia Reed Eddy |
| v. | |
| JOHN E. WETZEL, in his official capacity as Secretary of the Pennsylvania Department of Corrections; LOUIS S. FOLINO, in his official capacity as Superintendent of the State Correctional Institution at Greene; and JOHN KERESTES, in his official capacity as Superintendent of the State Correctional Institution at Mahanoy, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Presently pending is the Motion to Dismiss filed by Defendants, with brief in support (ECF Nos. 12 and 13), the Brief in opposition filed by Plaintiff (ECF No. 23), and the Reply Brief filed by Defendants (ECF No. 24). For the reasons that follow, the Motion will be denied.[1]

### Factual Background

Plaintiff, Russell Shoatz a/k/a Russell Shoats, is a state prisoner committed to the custody of the Pennsylvania Department of Correction.[2] This action was initiated by Plaintiff on May 8,

---

[1] All parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636 et seq.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 9 and 10).

[2] At the time Plaintiff initiated this lawsuit, he was housed in the Restricted Housing Unit at SCI-Mahanoy on Restricted Release List status. On September 4, 2013, Defendants notified the Court that on or about August 27, 2013, Plaintiff had been transferred to SCI-Frackville,

1

2013, by the filing of a counseled prisoner civil rights Complaint. (ECF No. 1). Named as Defendants are the Secretary of Corrections, John E. Wetzel, and the Superintendents of SCI-Greene, Louis S. Folino, and SCI-Mahanoy, John Kerestes.

Plaintiff has been held in solitary confinement continuously since June of 1991, approximately twenty-two (22) years. He alleges that the "specific conditions of his solitary confinement - conditions which he has been subjected to for over 21 consecutive years - amount to cruel and unusual punishment under the Eighth Amendment." Br. at 1-2. He also claims that under his specific circumstances, Defendants have failed to afford him all of the process he is due, thus, violating both his procedural and substantive due process rights under the Fourteenth Amendment. Plaintiff seeks declaratory and injunctive relief, including placement in general population, as well as compensatory and punitive damages.

Defendants have filed the instant Motion to Dismiss, with brief in support, in which they seek to have Plaintiff's claims dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter has been fully briefed and is ripe for disposition.

## Standard of Review

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such

---

where he was being evaluated for consideration for removal from the Restricted Release List. It appears from a review of the DOC Inmate Locator that Plaintiff is now being housed at SCI-Graterford. *See* http://www.portal.state.pa.us/portal/server.pt/community/ inmate_information (last viewed January 24, 2014).

"[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary

judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

**Discussion**

A.   <u>Claims Brought under the Eighth Amendment</u>

As noted *supra*, Plaintiff alleges that the specific conditions of his solitary confinement, namely conditions which he has been subjected to for over twenty-two consecutive years, amount to a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *See* U.S. Const. amend. VIII.

Courts consider the conditions of confinement as a whole because several deprivations in combination may constitute a constitutional violation when they have a mutually enforcing effect that produce the deprivation of a single, identifiable human need, such as health, safety, food, warmth, or exercise. *See Wilson v. Seiter,* 501 U.S. 294, 298, 304 (1991). For a condition of confinement to be considered cruel and unusual it must be: (i) grossly disproportionate to the severity of the crime warranting punishment, (ii) involve the wanton and unnecessary infliction of pain, or (iii) deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981). The prison environment itself may not be so brutal or unhealthy as to be in itself a punishment. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

A plaintiff asserting a claim of cruel and unusual conditions of confinement under the Eighth Amendment must satisfy a two-part test, with an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a plaintiff must show that the conditions to which he is subjected are "sufficiently serious," and to satisfy the subjective component, the plaintiff must show that the defendants are deliberately indifferent to his health or safety. *Id.*

The standard for determining whether prison conditions satisfy the Eighth Amendment's objective component focuses on whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society, " *Id.* at 833-34, or whether the inmate has been denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement.

In *Young v. Quinlan*, 960 F.2d 35, 364 (3d Cir. 1992), the Court of Appeals for the Third Circuit discussed conditions of segregation in the context of the objective component of a claim for violation of the Eighth Amendment as follows:

> Segregated detention is not cruel and unusual punishment per se, as long as the conditions of confinement are not foul, inhuman or totally without penological justification. It may be a necessary tool of prison discipline, both to punish infractions and to control and perhaps protect inmates whose presence within the general population would create unmanageable risks.
>
> Courts, though, have universally condemned conditions of segregation inimicable to the inmate-occupants physical health, and, in some instances, have also considered conditions that jeopardize the mental health or stability of the inmates so confined. The touchstone is the health of the inmate. While the prison

5

administration may punish, it may not do so in a manner that threatens the physical and mental health of prisoners.

There is a fundamental difference between depriving a prisoner of privileges he may enjoy and depriving him of the basic necessities of human existence. Isolation may differ from normal confinement only in the loss of freedom and privileges permitted to other prisoners. The duration and conditions of confinement cannot be ignored in deciding whether such confinement meets constitutional standards.

To meet the subjective requirement, a plaintiff must allege that defendants were aware of or deliberately indifferent to the health risks posed by the conditions of his long-term solitary confinement. *See Farmer,* 511 U.S. at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). The United States Supreme Court has defined "deliberate indifference" in the context of conditions of confinement as follows:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 U.S. at 837.

In *Hope v. Pelzer,* 536 U.S. 730, 738 (2002), the United States Supreme Court further clarified that the court "may infer the existence of this subjective state of mind [deliberate indifference] from the fact that the risk of harm is obvious." Additionally, in the context of prison conditions, assuming a sufficiently serious deprivation has occurred, deliberate indifference may be indicated by the lack of a legitimate penological justification for the condition. *Id*. at 737-38.

Defendants argue that Plaintiff's Complaint "appears to be nothing more than 'a general attack upon the penal system in Pennsylvania's RHU units;' more specifically, a general attack on the conditions imposed by the DOC's Administrative Custody regime for those inmates on RRL status." Defs' Br. at 9. The Court disagrees.

The Complaint clearly contains allegations regarding the <u>specific conditions</u> that Plaintiff has been subjected to during his prolonged continual isolation, including deprivation of human contact, physical activity, personal property, and mental stimulation. Additionally, Plaintiff alleges that his cell "exposes him to air temperature that is colder than the air temperature in the general prison population;" Complaint at ¶ 16, and that he "has received only 3-4 hours of sleep per night." *Id*. at ¶ 17. Throughout his Complaint, Plaintiff alleges facts sufficient to plausibly establish the objective requirement of his Eighth Amendment claim.

Likewise, the Court finds that Plaintiff has also alleged facts sufficient to plausibly establish the subjective requirement of his Eighth Amendment claim. For example, he has alleged, *inter alia*, that each of the Defendants are aware of the excessive risk that long-term solitary confinement causes, such as severe emotional, mental, and physical damage. Complaint at ¶¶ 63-66. In his Complaint, Plaintiff states that his lengthy period of solitary confinement has caused him mental anguish and suffering, including "increased stress, heightened anxiety, severe difficulty concentrating, short-term memory problems, chronic depression, agoraphobia, and unfathomable emotional pain and suffering." Complaint at ¶ 70. He further alleges that he has suffered physical injury and pain, including cataracts, prostatis, peripheral artery disease, heel spurs, arthritis, and hypertension / high blood pressure. *Id*. at ¶ 72.

Further, the Complaint contains allegations that each of the Defendants are aware of the actual mental and psychological harm and physical injury and pain suffered by Plaintiff as a

7

result of his extended time in solitary confinement. As noted by the court in *Wilkerson v. Stalder*, 639 F.Supp.2d 654, 680 (M.D.La. 2007), "[a]ny person in the United States who reads or watches television should be aware that lack of adequate exercise, sleep, social isolation, and lack of environmental stimulation are seriously detrimental to a human being's physical and mental health." [3]

For these reasons, the Court finds that Plaintiff's Complaint adequately alleges an Eighth Amendment cruel and unusual punishment claim. The duration of Plaintiff's solitary confinement has continued for a sufficient length of time that relief on his Eighth Amendment claim is plausible. Therefore, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim will be denied.

B. <u>Claims Brought under the Fourteenth Amendment</u>

Plaintiff also claims that Defendants' actions in failing to follow DOC regulations and procedures for periodic review of his administrative custody assignment amounts to a violation of the Due Process Clause of the Fourteenth Amendment.

*1. Procedural Due Process*

Courts use a two-step inquiry to determine whether a plaintiff has stated a valid procedural due process claim. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). First, the court determines "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)) (*Shoats I*). If the court finds that the plaintiff has alleged such a deprivation, it will then proceed to the

---

[3] Further, as one district court observed "a conclusion . . . that prolonged isolation from social and environmental stimulation increases the risk of development of mental illness does not strike this court as rocket science." *McClary v. Kelly*, 4 F. Supp.2d 195, 209 (W.D.N.Y. 1998).

8

second stage of the inquiry, asking "whether the procedures attendant upon that deprivation were constitutionally deficient." *Thompson,* 490 U.S. at 460; *Shoats I,* 213 F.3d at 143 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In this case, the answer to the threshold question - whether Plaintiff suffered a deprivation of a protected liberty interest by virtue of his extended solitary confinement - is easily resolved. In *Shoats I,* our appellate court held that Plaintiff had a protected liberty interest because his placement in solitary confinement for eight (8) consecutive years caused him to suffer a "substantial adverse impact" that exceeds his sentences, as well as an "atypical and significant hardship" in relation to "the ordinary incidents of prison life." *Shoats I,* 213 F.3d 143-44. Since *Shoats I*, Plaintiff has continued to be confined in solitary confinement, and according to the Complaint he has also been subjected to more restrictive conditions, *i.e.,* the sealing of the steel doors of his cell and the "no talking" policy. *See* Complaint at ¶¶ 37-38.

There is no disagreement among the parties that Plaintiff has a protected liberty interest that has been adversely affected by his indefinite segregation in administrative custody. However, Defendants argue that Plaintiff's procedural due process claim is barred by the doctrine of claim preclusion or *res judicata* because there is complete identity between this action and Plaintiff's prior litigation in which he challenged his solitary confinement, i.e., *Shoats I*.[4]

"Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen. of the United States,* 621 F.3d 340, 347 (3d Cir. 2010). "Under res judicata, a final

---

[4] "Res judicata" bars relitigation of the same cause of action between the same parties where there is a prior judgment, whereas "collateral estoppel" bars relitigation of a particular issue or determinative fact.

judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009). "The purpose of claim preclusion is to avoid piecemeal litigation of claims arising from the same events." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999). The party seeking to invoke claim preclusion must show that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney*, 621 F.3d at 347 (citation omitted).

The parties do not dispute that the first two factors of claim preclusion have been met - final judgment and privity. The parties do dispute, however, whether the third prong has been met. Defendants argue that Plaintiff's claims in the instant action are identical to his claims in *Shoats I* in which he challenged his continued placement in solitary confinement on procedural grounds. Plaintiff argues that in *Shoats I* Plaintiff challenged his solitary confinement through 1997, whereas the instant action relates to Plaintiff's continued placement in solitary confinement after twenty-one years. Plaintiff argues that this case falls within the "continuing course of conduct" exception to *res judicata* and that the instant claims stem from events that post-date the prior judgment. Pl's Br. at 14.

The Court finds Defendants' argument unavailing. "Res judicata applies . . . only to claims arising prior to the entry of judgment. It does not bar claims arising <u>subsequent to</u> the entry of judgment and which did not then exist or could not have been sued upon in the prior action." *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955) (original emphasis); *see also Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1430 (3d Cir. 1994) (citing

10

same); *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 219 (E.D.Pa. 2010) ("The entire point of claim preclusion is to prevent future actions on grounds that <u>could have been raised</u> in an earlier action, not to prevent future actions on grounds that did not yet exist (and therefore could not have been raised) in an earlier action.") (original emphasis).

Accordingly, the Court finds that Plaintiff's prior due process claims in *Shoats I* do not preclude his procedural due process claims in this case.

In the alternative, Defendants contend that Plaintiff's Complaint fails to state a procedural due process claim. Plaintiff counters that "he is not alleging a *per se* violation of the Fourteenth Amendment, but rather that he alleges that Defendants failed to follow the established procedures in such a way that - under his specific circumstances - amounts to a violation of his Fourteenth Amendment right to procedural due process." Pl's Br. at 13-14.

The Complaint identifies a wide range of alleged procedural deficiencies, which include the following:

1. Plaintiff was never provided any reasons as to why he is on the Restricted Release List ("RRL");

2. Plaintiff is not provided notice when he is reviewed for release from the RRL;

3. Plaintiff is not provided notice of any decisions taken by any prisons, including the DOC Secretary, to keep him on the RRL;

4. Plaintiff has never been told what he must do to be removed from the RRL;

5. The review by the Program Review Committee ("PRC") is a perfunctory proceeding, and the extension of Plaintiff's solitary confinement is automatic;

6. The PRC refuses to provide Plaintiff with a full and detailed accounting of the evidence relied upon in continuing his solitary confinement;

7. Defendant Superintendent Folino has denied Plaintiff's request for a detailed and complete explanation of the basis of his continued solitary confinement, other than replying that Plaintiff is "an escape risk in a less secure status;" and

8. Neither the PRC nor any DOC official has engaged in a meaningful evaluation of whether Plaintiff is an escape risk in a less secure status.

The United States Supreme Court has recognized that notice of the factual basis underlying one's segregated confinement and a fair opportunity for rebuttal "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations" of liberty interests. *Wilkinson v. Austin,* 545 U.S. 209, 225-26 (2005). The Court finds that there is a potential set of facts which, consistent with the facts alleged in the Complaint, could show that Plaintiff is entitled to relief for Defendants' failure to provide sufficient process. Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claim will be denied. Determination of the process due would be premature at this early stage of the litigation, where Plaintiff has yet to produce evidence to support his allegations.

2. *Substantive Due Process*

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" *Zimmerman v. Burch*, 494 U.S. 113, 125 (1990). Official conduct violates substantive due process if it "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Evans v. Sec'y of Dept. of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (citing *City of Sacramento v. Lewis*, 253 U.S. 833, 847 n. 8 (1988)). Our Court of Appeals has explained that

> As a general matter, it is governmental "conduct intended to injure" that is "most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849, 118 S.Ct. 1708 (internal citations and quotation marks omitted). Conscience-shocking behavior may also arise in the form of injuries produced by deliberate

indifference, although, where the conduct was not intentional, it is a "closer call[
]." *Id.* "Negligently inflicted harm," by contrast, "is categorically beneath the threshold of constitutional due process" and will never be conscience shocking. *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

*Id.* "[I]n the custodial situation of a prison, forethought about an inmate's welfare is not only feasible, but obligatory," and therefore a "deliberate indifference" standard of culpability is appropriate for establishing a conscience-shocking conduct. *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)).

Here, Plaintiff alleges that Defendants' "failure to provide constitutionally sufficient procedures . . . capable of recognizing the illegitimacy of holding Shoatz as an escape risk constitutes deliberate indifference that shocks the conscience." Pl's Br. at 15-16. The Court finds that the factual allegations of the Complaint sufficiently support a substantive due process claim. Accordingly, this portion of Defendants' motion to dismiss also will be denied.

## Conclusion

For all the foregoing reasons, the Motion to Dismiss filed by Defendants will be denied. An appropriate Order follows.

**AND NOW**, this 27th day of January, 2014,

It is hereby **ORDERED** that the Motion to Dismiss filed by Defendants is **DENIED** in its entirety.

In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), Defendants' responsive pleading shall be served on or before **February 10, 2014.**

*s/Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc: Richard L. Etter
Reed Smith LLP
Email: retter@reedsmith.com

Stefanie Lepore Burt
Reed Smith LLP
Email: slepore@reedsmith.com

Bret Grote
Abolitionist Law Center
Email: bretgrote@abolitionistlawcenter.org

Daniel M. Kovalik
United Steelworkers of America
Email: dkovalik@usw.org

Dustin McDaniel
Abolitionist Law Center
Email: dsmcdan@gmail.com

Harold J. Engel
Email: halengel@gmail.com

Scott A. Bradley
Office of the Attorney General
Email: sbradley@attorneygeneral.gov